CASE 65—PETITION EQUITY—MAY 9.

## Farmers' Bank of Kentucky v. Stapp.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION

1. WEIGHT GIVEN JUDGMENT OF CHANCELLOR.—In cases of equitable cognizance, such as fraud or mistake, if the testimony preponderates for the one side or the other in such a way as to convince this court the chancellor below has erred, his judgment will be reversed, although it may not be flagrantly against the evidence. The rule applicable to verdicts of juries does not apply in such cases, although where the evidence is evenly balanced or so slightly in favor of the one side as to create doubt in the mind of the court, much weight will be attached to the finding below.

2. FRAUDULENT CONVEYANCE.—In this action brought by a creditor to set aside a conveyance from the debtor to his wife upon the ground it was intended to defraud creditors, the evidence fails to establish the defense that the land was paid for by his wife and conveyed to the husband by mistake, and that his conveyance to her was intended to correct that mistake. As the conveyance attacked recites that the husband is free from debt, and that the consideration is "love and affection," the testimony establishing the mistake as well as that showing the consideration to have been paid by the wife should at least be strong enough to overthrow the *prima facie* case made out by the deed itself.

Farmers' Bank of Kentucky v. Stapp.

W. P. D. BUSH, FINLAY F. BUSH and HENRY F. TURNER. for
APPELLANT.

 The judgment of the court below is flagrantly against the
weight of the evidence and should be reversed. The facts prac-
tically amount to a confession of fraud.

KOHN, BAIRD & SPINDLE for appellees.

1. On issues of fact the judgment of the chancellor will not be dis-
 turbed unless flagrantly against the weight of the evidence.
 (Russell v. Turnpike Company, 13 Bush, 307; Williams v. Rog-
 ers, 14 Bush, 776; Davidson v. Morrison, 80 Ky., 397; Campbell
 v. Railroad, 9 Ky. Law Rep., 799; McDyer v. Large, 13 Ky. Law
 Rep., 430; Williams v. Williams, 13, Ky. Law Rep., 591; Davesac
 v. Seiler, 14 Ky. Law Rep., 497; Harris v. Ash, 15 Ky. Law Rep.,
 679.)
2. Nor will the court enter into a minute scrutiny to determine the
 preponderance. (Varble v. Bigley, 14 Bush, 698.)
3. A mere preference is not a fraud, and is valid against all attacks
 except under the statute against preferences. (Givens v. Gor-
 don, 3 Met., 539; Wintersmith v. Poynter, 2 Met., 487; White-
 head v. Woodruff, 11 Bush, 209; Matthews v. Lloyd, 11 Ky. Law
 Rep., 843.)
4. Both husband and wife can not testify. (Civil Code, sec. 606;
 Booth v. Van Arsdale, 9 Bush, 719; Wise v. Foote, 81 Ky., 13;
 Howard v. Tenny, 87 Ky., 55; Tabor v. Harding, 9 Ky. Law
 Rep., 491; Covington v. Geiler, 14 Ky. Law Rep., 145.)
5. A rejected pleading can not be considered unless embodied in the
 record by bill of exceptions. (People's Mutual v. Boesse, 92
 Ky., 293.)
6. A judgment is barred in fifteen years after issual of the last
 execution. (Kentucky Statutes, sec. 2514; Civil Code, sec. 401.)
7. No lien is obtained by filing suit under sec. 439 of Code, except
 on property described or attached. (Warren v. Robinson, 1
 Bush, 294; Hoffman v. Thomas, 2 Duv., 106.)
8. The life of a judgment can be prolonged only by issuing execu-
 tions, and not by bringing suit under sec. 439 of Civil Code.
 (Ky. statutes, sec. 2514; Civil Code, sec. 401; Dorsey v.
 Phillips, 84 Ky., 422; Proctor v. Bell, 16 Ky. Law Rep.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

 In the year 1877, the appellant, having a judgment against
W. A. Stapp, had an execution issued upon it, that was re-
turned *no property found*. This action was afterwards in-

stituted in March, 1892, by the appellant, assailing certain conveyances of property by the husband to the wife, on the ground that the conveyance was in fraud of creditors.

In the petition this state of fact is alleged: In the year 1885 (September 10), Robert Johnson conveyed to W. H. Stapp a lot in the city of Louisville, at the Northwest corner of Sixteenth and Walnut streets, for the sum of three thousand dollars. In May, 1887, W. H. Stapp conveyed to his wife (the appellee) this lot in consideration of love and affection, the deed reciting that the grantor was then not in debt. In 1888 the husband and wife, or the wife, purchased of one Nehan, a lot situated at Twenty-sixth and Walnut streets for $10,000, and the lot conveyed by the husband, W. H. Stapp, to his wife was taken as part payment on the ten thousand dollar purchase, the lot being valued at $4,000. The valuation, $4,000, was in fact the first payment made to Nehan.

The appellant obtained an attachment that was levied on this lot (purchased of Nehan) as the property of the husband, and asked that it be sold to satisfy the judgment.

The defense of Stapp and his wife is that the lot deeded by Johnson to Stapp was purchased for or by the wife with her own means, and the deed to him, Stapp, was executed by mistake, and that this conveyance to his wife was simply to correct the mistake.

This raised an issue of fact, the solution of which determines the rights of the parties. The conveyance by Stapp to his wife contains the following recital: "Whereas, I, the undersigned, William H. Stapp, party of the first part, am free from debt, and desire to secure to my wife and family a homestead, now, therefore, in consideration of love and affection," and then follows the ordinary verbiage contained in such instruments.

It is conceded that this judgment against Stapp was then in force, having been obtained years before in the Henderson Circuit Court, and the object of the conveyance being plainly manifested on the face of the deed as well as the party furnishing the consideration, the testimony establishing this mistake, as well as that showing the consideration to have been paid by the wife, should at least be strong enough to overthrow the *prima facie case* made out by the deed itself. This the appellee failed to do, and when examining the entire testimony upon this issue we are satis- fied the recitals in the conveyance give the true history of the transaction. Counsel for the appellee are mistaken in supposing that in cases of equitable cognizance such as fraud or mistake, this court will regard the decision of the chancellor as we would the verdict of a jury, and refuse to set aside the judgment unless flagrantly against the evi- dence. That proper consideration will be given the opinion of the court below in any case necessarily follows, but where the testimony preponderates for the one side or the other in such a way as to convince this court the chancellor below has erred, his judgment will be reversed.

Loose declarations are found in some of the cases attach- ing so much importance to the chancellor's opinion as to indicate the application of the same rule of practice to his judgment as to the verdict of a jury. This, however, is not the rule. Where the original jurisdiction is with a court of equity, or concurrent with that of a common law court, and has been decided by the chancellor, the weight of the evi- dence must prevail, but where evenly balanced, or so slight- ly in favor of the one side as to create doubt in the mind of the court, much weight will be attached to the opinion be- low.

This conveyance from Stapp to his wife seems to have

been written by one skilled in the law, and why he should have departed from the real facts of the case (if the husband's version is correct), and make out a case of fraud by the very recital in the deed, is difficult to perceive. The attorney has not been examined as a witness, but the husband undertakes to explain why it was, and attempts to show the consideration as moving from the wife, and the money paid to Johnson out of her own means.

It is claimed by the husband that this money, the $3,000,. was paid Johnson by his wife, but when paid, or how paid, or where she kept her money, he is in entire ignorance, and does not even know who made the trade with Johnson.

In the year 1877 Mrs. Stapp was made a feme sole, and was then living in Henderson, Ky. In 1884 or 1885 she received from her grandfather's estate $1,400, and after that received $1,000. After she received this money, or even her real estate from which it was derived, she formed a partnership with one Sugg, in Henderson, in the hotel business. They failed in business and made an assignment, and some of their creditors have never yet been paid. It is said that the assignment was not on account of insolvency, but merely for the purpose of winding up an unprofitable business. Still the fact that Mrs. Stapp was out of means and disturbed as to her condition is made certain by those who knew her at Henderson. Her husband had then left Henderson and gone to Louisville, where his wife, shortly after the hotel failure, joined him.

He seems to have prospered in business after he went to Louisville, and had accumulated means to such an extent as enabled him to make an expenditure of $3,500 a year for the support of himself and family. It is immaterial how he made this money, only to the extent that it shows his ability to furnish this money and the inability of the wife, the latter

having failed, and the husband making rapid accumulations. If Mrs. Stapp kept in her possession, or under her control, this $1,400 and $1,000, and the additional $500 she obtained, it is most singular that her husband never knew where she kept it, or what use she had been making of it for several years.

His testimony might have shown that she had loaned the money out. That she had deposited in bank, or invested it in stocks or property, but what disposition she made of it, or how she kept it, is best stated in his own language. When asked where she kept this money, his answer was: "I don't know; she kept it at home, I presume."

It is apparent when Stapp left Henderson he had no means. It also appears that his wife failed in business, and had actually borrowed $200 of her sister, and, finally, made an assignment, and now it is maintained that through all these pecuniary troubles she kept this money on her person or at her home.

It is shown by some witness that he saw the wife with a roll of money before she left Henderson, but how much he does not know, nor is there any testimony in any way of a convincing character tending to show that the wife paid this money, but on the contrary the husband evidently paid it, or advanced the means for that purpose .

The judgment is therefore reversed, and cause remanded for proceedings consistent with this opinion.